NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————

CLEMENTE HERNANDEZ,                    :

        Plaintiff                    :

        v.                           :

THE CITY OF UNION CITY, THE            :
DEPT. OF POLICE OF THE CITY OF         :
UNION CITY, DETECTIVES JOSE            :
RODRIGUEZ, CARLOS SEGARRA,             :
OMAR HERNANDEZ, MENDEZ,                :
LORENTE, SERGEANT MARK A.              :
JULVIE, LIEUTENANT DENNIS              :
KOHREHERR ,                            :
                                       :
        Defendants.                  :

—————————————————————   :

**Hon. Dennis M. Cavanaugh**

# OPINION

Civil Action No. 04-CV-1935(DMC)

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon the motion of Defendants Rodriguez, Segarra, Hernandez and Julvie for summary judgment against Plaintiff Clemente Hernandez ("Plaintiff"). Defendants City of Union, Police Department of Union City, Lorrente, Mendez and Kohreherr adopt and join in said motion. For the following reasons, the Court grants Defendants' motion for summary judgment.

## I. BACKGROUND

Plaintiff filed a Complaint in the instant action on April 27, 2004. Defendants Rodriguez, Segarra, Hernandez and Julvie filed a motion for summary judgment on June 30, 2005, entered on August 8, 2005. Defendants City of Union, Police Department of Union City, Lorrente,

1

Mendez and Kohreherr joined in this motion.  Plaintiff filed Opposition on August 5, 2006, and

Defendants Rodriguez, Segarra, Hernandez and Julvie  filed a reply brief on August 19, 2005.

On August 22, 2005, Defendants City of Union, Police Department of Union City, Lorrente,

Mendez and Kohreherr joined in this reply brief.

     The instant action arises from the circumstances surrounding the arrest of Plaintiff on

June 4, 2002.  Plaintiff has labeled four separate Counts in his Complaint.  In Count I, Plaintiff

asserts a federal civil rights claim pursuant to 42 U.S.C § 1983.  In Count II, Plaintiff appears to

be alleging that certain negligent actions of the Defendants committed under "color of law"

caused injuries to the Plaintiff including various kinds of mental and physical distress.  Thus, the

Court will consider Count II to be a claim for negligent infliction of emotional distress.  In Count

III, Plaintiff asserts the tort of malicious prosecution against Defendants.  In Count IV, Plaintiff

alleges he was falsely arrested because of the negligent conduct of Defendants and consequently

suffered injuries.

## II. SUMMARY JUDGMENT STANDARD

     Summary judgment is granted only if all probative materials of record, viewed with all

inferences in favor of the non-moving party, demonstrate that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c);

Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of

showing that there is no genuine issue of fact and it must prevail as a matter of law, or that the

non-moving party has not shown facts relating to an essential element of the issue for which he

bears the burden. Celotex, 477 U.S. at 331.  If either showing is made then the burden shifts to

the non-moving party, who must demonstrate facts which support each element for which he

bears the burden and must establish the existence of genuine issues of material fact. Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

## III. ANALYSIS

### A. State Law Claims

Plaintiff's state law claims for negligent infliction of emotional distress (Count II), malicious abuse of process (Count III), and false arrest (Count IV) are governed by the New Jersey Tort Claims Act N.J.S.A. 59:1-2, et seq.  The New Jersey Tort Claims Act provides that a "claimant shall be forever barred from recovering" against a public entity or a public employee unless a notice of claim has been filed with that entity "not later than the ninetieth day after accrual of the cause of action."  N.J.S.A. 59:8-9. Courts may permit a late notice of claim to be filed "within one year after the accrual of [the] claim."  Id.  After the expiration of the one year period, the court lacks jurisdiction to permit the filing of a late notice.  Fuller v. Rutgers, 154 N.J. Super 420, 423 (App. Div. 1977), certif. denied, 75 N.J. 610 (1978).

Here, Plaintiff's alleged causes of action accrued on June 4, 2002, the date of the arrest. See Michaels v. State of New Jersey, 955 F.Supp.315, 326 (1996).  Accordingly, Plaintiff was required to provide Defendants with a Notice of Tort Claim regarding any state law claims no later than September 4, 2002.  The Notice of Tort claim filed by Plaintiff, however, is dated February 2, 2004, which is approximately one year and five months overdue.  (See Podvey Cert., Ex. V).

In light of the above, it is the finding of this Court that Plaintiff failed to satisfy the time

3

requirements of <u>N.J.S.A.</u> 59:8-9.  As such, Plaintiff's state law claims for negligent infliction of

emotional distress (Count II), malicious abuse of process (Count III) and false arrest (Count IV)

are dismissed.

**B. 42 U.S.C. § 1983**

Count One of Plaintiff's Complaint alleges a violation of 42 U.S.C. §1983.  Section 1983

provides:

> Every person who, under the color of state law ... subjects or
> causes to be subjected a citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights,
> privileges or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law.

Thus, to recover under section 1983, a plaintiff must show two elements: (1) a person deprived or

caused him to be deprived of a right secured by the Constitution or laws of the United States, and

(2) the deprivation was done under color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48

(1988); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970); <u>Sample v. Diecks</u>, 885 F.2d

1099, 1107 (3d Cir. 1989).  Furthermore, Section 1983 does not confer substantive rights, but

provides a remedy for the deprivation of rights protected by federal law.  <u>Oklahoma City v.</u>

<u>Tuttle</u>, 471 U.S. 808, 816 (1985); <u>see also</u> <u>Sameric Corp. of Delaware, Inc. v. City of</u>

<u>Philadelphia</u>, 142 F.3d 582, 590 (3d Cir. 1998).

In analyzing a Section 1983 claim, a Court must first identify the specific constitutional

right allegedly violated.  <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).  Plaintiff's Complaint is

construed by the Court to be attempting to state several constitutional violations which include  a

violation of the Fourth Amendment for alleged false arrest and false imprisonment, a substantive

due process violation for alleged negligent investigation, and a procedural due process violation

from alleged delay in bringing Plaintiff's case to trial.

### 1) Fourth Amendment

The Fourth Amendment prohibits a police officer from arresting and incarcerating a person without probable cause. U.S. Const., amend. IV; see also Albright v. Oliver, 510 U.S. 266, 274 (1994) (Section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures); Walmsley v. Phila., 872 F.2d 546, 551 (3d Cir.1989) (citations omitted) (it is well established that an arrest without probable cause is a constitutional violation actionable under Section 1983); see also Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir.1988) (noting that to state a claim for false arrest a plaintiff must allege (1) an arrest, (2) without probable cause). Moreover, "where the police lack probable cause to make an arrest, the arrestee has a claim under Section 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir.1995); Palma v. Atl. County, 53 F.Supp.2d 743, 755 (D.N.J.1999) (citing Groman ); see also Anela v. City of Wildwood, 595 F.Supp. 511, 512 (D.N.J.1984) (holding a person for any length of time without legal justification may be a Fourth Amendment violation of the right to liberty and thus states a claim of false imprisonment under Section 1983).

Probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir.1997). "Probable cause...requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir.1995). Thus, a

defense to both an unlawful arrest and false imprisonment claim is that the defendant police officers acted with probable cause. <u>Sharrar</u>, 128 F.3d at 817-18 (a key element of a Section 1983 unlawful arrest claim is that the police officer arrested the plaintiff without probable cause); <u>Groman</u>, 47 F.3d at 636 ("an arrest based on probable cause could not become the source of a [§ 1983] claim for false imprisonment").

This Court must determine whether under the undisputed material facts, Defendants had probable cause to arrest Plaintiff.  At this point, the Court notes that none of the material facts relevant to the analysis of this claim are in dispute.  The Court has carefully reviewed both Defendants' Statement of Material Facts ("Defendant's SOF") and Plaintiff's Statement of Material Facts[1] (Plaintiff's SOF) in the light most favorable to the non-moving party.  The material facts alleged by Defendant regarding the undercover operation (Def. Facts 16-23) are not disputed by Plaintiff.  Nor does Plaintiff dispute that Detective Hernandez knew the Plaintiff from prior domestic violence incidents.  (Def. Facts 14-15.)  Although Plaintiff states that he provided the police with an alibi after he was arrested, it is undisputed that Detective Hernandez believed he recognized Plaintiff as the drug seller on May 15, 2002.  Although Plaintiff devotes a significant amount of attention in his Statement to the arrest report, Plaintiff's speculations regarding the means of its execution without any evidentiary support do not create material disputes of fact.

As such, the Court finds that it is materially undisputed that the critical fact leading to Plaintiff's arrest was Detective Hernandez' recognition of Plaintiff as the suspected drug seller in

---

[1] Plaintiff submitted a document entitled "Civil Action Statement of Denial by Plaintiff of the Statement of Material Facts of Defendants and Plaintiff Statement of Material Facts".

the May 15th transaction.  During the undercover operation, Detective Hernandez had a clear unobstructed view of the suspect for ten to twelve seconds, and then pursued the suspect for another one half block to confirm it was Plaintiff.  It is also undisputed that Detective Hernandez lived on 48th Street in Union City several houses away from Plaintiff for at least one and one half years preceding the undercover operation on May 15, 2002.  He had spoken to Plaintiff in the street at least two or three times.  Additionally, Detective Hernandez had previously responded to Plaintiff's house numerous times in response to domestic violence complaints.  Thus, it is reasonable to assume Detective Hernandez was familiar with Plaintiff's identity and appearance. It is further materially undisputed that a photographic identification was made of the Plaintiff prior to the arrest by two other officers who had participated in the undercover operation. Finally, it is undisputed that Defendants received an anonymous tip stating someone was selling drugs at the corner of 49th Street and Palisades Avenue whose description largely fit that of Plaintiff.

The Third Circuit has stated that the "strongest inculpatory evidence is clearly the positive identification."  Wilson, 212 F.3d at 792.  Here, Detective Hernandez had ample opportunity to view the suspect during the undercover operation, and exhibited a high level of certainty.  Furthermore, Detective Hernandez was familiar with Plaintiff's identity because of the domestic violence incidents and the fact that he lived on the same street as Plaintiff. Furthermore, the facts alleged indicate that Detective Hernandez was not the only police officer who identified Plaintiff.  Rather, two other officers identified the suspect they had seen during the undercover investigation as the Plaintiff from a photograph.

This Court is satisfied that an objectively reasonable officer would have believed that

Plaintiff was the suspect who sold drugs to Detective Rodriguez based on the positive identifications made by the three police officers.  Moreover, "an identification by a witness or victim is sufficient to make out probable cause for an arrest."  Green v. City of Paterson, 971 F.Supp. 891, 907 (D.N.J. 1997).  As such, it is the finding of this Court that Defendants had probable cause to arrest Plaintiff.  Accordingly, Plaintiff's Fourth Amendment false arrest claim must be dismissed.

### 2) Substantive Due Process

Plaintiff alleges that Defendants violated his substantive due process rights.  The Court interprets Plaintiff's Complaint to allege that the police officers violated his substantive due process right to liberty by conducting a "grossly and reckless [sic] negligent investigation" that resulted in arrest without probable cause.

"The touchstone of due process is the protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974).  However, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)(citation and internal quotation marks omitted).  As such, to establish a violation of substantive due process rights, the action alleged must be "so ill-conceived or malicious that it shocks the conscience." Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  Importantly, mere negligence is not enough to meet this standard.  See Lewis, 523 U.S. at 847.  Defendants submit that Plaintiff has not alleged any action on the part of Defendants that rises to the level of shocking the conscience.

Because Plaintiff alleges Defendants conducted a grossly negligent investigation, the

Court must review the relevant undisputed material facts.  Defendants set forth material facts relevant to the undercover operation on May 15, 2002, Detective Hernandez' recognition of Plaintiff, the photographic identification process, and the investigative report relating to the May 15, 2002 operation.  (Def. SOF ¶16-27, 29-37).  Although Plaintiff has submitted an opposing Statement of Facts, he does not dispute any of the facts recounted by Defendants in their Statement of Facts.  Rather, Plaintiff makes conclusory allegations in his Statement, unsupported by any evidence.  Specifically, Plaintiff questions the involvement of additional officers not listed on the investigative report in the operation (Pl's SOF ¶16, 32, 34) what the seller was or was not wearing (Pl's SOF ¶17), and the extent of Sergeant Julvie's participation.  (Pl's SOF ¶13-14).  Plaintiff also devotes significant attention to the contents of the investigative report, which he claims is inconsistent with the May 15, 2002 arrest report.  (Pl's SOF ¶17).  None of Plaintiff's Statement raises a genuine dispute as to the material facts recounted by Defendants relevant to the investigation.  As such, the Court will consider Defendants' material facts as to the investigation undisputed.

The Court finds that the investigation conducted by the police officers does not rise to the level of shocking the conscience.  In fact, there is nothing shocking about it.  According to the facts alleged, viewed in the light most favorable to Plaintiff, Plaintiff was identified as the suspect in an undercover drug operation.  Based upon this, as well as a photographic identification, Defendants determined there was probable cause to arrest Plaintiff.  Moreover, as noted above, this Court agrees that probable cause existed to warrant Plaintiff's arrest.

The Court notes that a significant portion of Plaintiff's opposing Statement of Facts is devoted to Plaintiff's opinion and speculations regarding the buy money used by the police

9

officers in the undercover operation.  However, the Court finds that none of these "facts" are materially relevant to the instant analysis.

In light of the above, the Court finds that no material issue of fact exists as to whether Plaintiff's substantive due process rights were violated.  As such, this claim must be dismissed.

### 3) Procedural Due Process

Plaintiff alleges that his right to procedural due process was violated by Defendants because of the delay in bringing him to trial.  The facts indicate that Plaintiff was arrested on June 4, 2002.  He was indicted on July 31, 2002 and the trial was held on December 2-3, 2003.

"The Fourteenth Amendment, applying the Sixth Amendment right to a speedy trial, is enforceable against the States as 'one of the most basic rights preserved by our Constitution.'" Dickey v. Florida, 398 U.S. 30, 37 (1970) (quoting Smith v. Hooey, 393 U.S. 374, 374-5 (1969)). However, although the Court recognizes the importance of the right to speedy trial, any delay in the instant action does not give rise to liability on the part of the Defendants.  As the Supreme Court stated in Dickey, the duty to protect any speedy trial rights lies with the State and the prosecuting authorities.  Dickey, 398 U.S. at 37.  Here, Defendants are Union City and its police officers.  They are not responsible for any alleged delay by the State in bringing this case to trial. As such, Plaintiff's procedural due process claims must be dismissed.

### 4) Fifth Amendment

Plaintiff claims that his Fifth Amendment rights have been violated because he was deprived of liberty without due process of law.  Specifically, Plaintiff asserts that his rights were violated because of the absence of probable cause in his arrest.  The Court has addressed this

argument in the context of both Plaintiff's Fourth and Fourteenth Amendment claims.  The Court finds that the Fifth Amendment is inapplicable to these allegations and declines to address them in this context.

## C. Qualified Immunity

Plaintiff has alleged that Defendants, in their official and non-official capacities, violated his civil rights.  As a defense, Defendants assert they are entitled to qualified immunity because they were government employees at all times relevant to Plaintiff's allegations.  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

The initial inquiry for a court addressing a claim of qualified immunity is whether, "[t]aken in the light most favorable to the party asserting the injury,...the facts alleged show the [defendant's] conduct violated a constitutional right." Id. at 201.  If a constitutional violation cannot be established, the inquiry ends.  Id.  However, if a violation can be made, then the court must determine whether the constitutional right was clearly established.  Id.  A right has been clearly established if "it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." Id. at 202; Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004).  Therefore, "[i]f the law did not put the [defendant] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id.

In the case at hand, the facts demonstrate that no constitutional violations have occurred.

11

Defendants cannot be held liable on Plaintiff's civil rights claims and there is no need to grant qualified immunity.  However, even if the Court were to assume there was a violation, there is no evidence that Defendants' decision to arrest Plaintiff was unlawful and qualified immunity would be appropriate.  Accordingly, Defendants' motion for summary judgment based on qualified immunity is granted.

## IV.CONCLUSION

In light of the above, Defendants' motion for summary judgment is **granted**.

 S/ Dennis M. Cavanaugh

Dennis M. Cavanaugh, U.S.D.J.

Date:      February 23, 2006
Original: Clerk's Office